David A. Shimkin (SBN 290818)
dshimkin@cozen.com
COZEN O'CONNOR
601 S. Figueroa Street, Suite 3700
Los Angeles, CA  90017
Telephone: 213.892.7900
Facsimile: 213.892.7999

Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

David E. Schlesinger, MN State Bar No. 0987009 (*pro hac vice* forthcoming*)*
schlesinger@nka.com
Riley Palmer, MN State Bar No. 0504224 (*pro hac vice* forthcoming)
rpalmer@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center, 80 S. 80th Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3277
Facsimile: (612) 388-4878

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nicholas Alley,<br><br>                              Plaintiff,<br><br>     v.<br><br>Anduril Industries, Inc., and<br>Area-I, LLC.<br><br>                              Defendants. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF, FOR**<br><br>**(1) Breach of Contract** |

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF; DEMAND FOR JURY TRIAL

**(2) Failure to Pay Final Wages in Violation of the California Labor Code,** Cal. Lab. Code § 203

**(3) Disability Discrimination in Violation of the Americans with Disabilities Act,** 42 U.S.C §§ 12201 *et seq.*

**(4) Retaliation in Violation of the Americans with Disabilities Act,** 42 U.S.C § 12203

**(5) Disability Discrimination in Violation of the California Fair Employment and Housing Act,** Cal. Gov't Code § 12940(a)

**(6) Retaliation in Violation of the California Fair Employment and Housing Act,** Cal. Gov't Code § Cal. Gov't Code § 12940(m)(2)

**(7) Failure to Take all Reasonable Steps to Prevent Discrimination and Retaliation**, Cal. Gov't Code § 12940(k)

**DEMAND FOR JURY TRIAL**

## PRELIMINARY STATEMENT

1.    This is a complaint for damages and equitable relief brought by Nicholas Alley, Ph.D. ("Alley" or "Plaintiff"), the founder and CEO of a cutting-edge aerospace company who was fired from his leadership role as CEO by an acquiring entity because he admitted he had a serious health condition and requested reasonable accommodations. Defendant Anduril Industries, Inc ("Anduril") acquired Alley's company, Area I, LLC ("Area-I"), in March 2021. In November 2022, Alley met

with a representative of Anduril and requested reasonable accommodations due to a serious cardiac condition. Less than three weeks later, Anduril terminated Alley from his role as CEO and thus deprived him of the leadership of a company that he had founded and led since 2009.

2.  Not only were Anduril's actions unlawful under both federal and California antidiscrimination laws, but while discriminating against Alley, Anduril breached Alley's severance agreement, thereby depriving him of $4,000,000. But Alley's damages are far greater than $4,000,000. Anduril's termination of Alley from the role of CEO of Area-I, and subsequent constructive termination of Alley's entire employment, have caused Alley damages of many millions of additional dollars.

## PARTIES

3.  Alley is an individual residing in Canton, Georgia. Alley is the founder of Area-I, a defense technology and innovation leader in uncrewed autonomous systems technology ("UAS"). Area-I has been engaged in the development of UAS for the U.S. Department of Defense, NASA, and NOAA since 2009. Area-I's core expertise lies in the aerodynamic and structural design of highly optimized, mission-specific aircraft as well as the flight control and autonomy that enable those aircraft to accomplish their missions with minimal operator input.

4.  Defendant Anduril is a Delaware corporation with its principal place of business in Costa Mesa, California. Anduril is a military technology company specializing in autonomous systems.

5.  Defendant Area-I is a Delaware limited liability company with its principal place of business in Marietta, Georgia.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C

§§ 12101 *et seq*. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in the United States District Court, Central District of California pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims occurred in this district. This case is properly assigned to the Southern Division of the Central District.

## FACTUAL ALLEGATIONS
## ALLEY FOUNDS AREA-I AND DEVELOPS IT INTO
## A PREMIER UAS COMPANY

8.     Alley earned his Ph.D. in Mechanical Engineering from Utah State University in 2006. Before founding Area-I, Alley worked at various private, educational, and government entities, honing his expertise in UAS.

9.     In early 2009, Alley founded Area-I with a focus in UAS technology. Area-I has been contracted by multiple governmental and commercial entities. As a recognized leader in UAS technology, Area-I, under Alley's leadership, received substantial funding for its projects, including a government contact to further develop the company's Agile-Launched Tactically-Integrated Unmanned System (ALTIUS).

10.     ALTIUS was introduced by Alley and Area-I in 2015 and its revolutionary design and capabilities soon cemented Area-I as a leader in UAS and defense technology. Under Alley's leadership, Area-I became renowned for its ALTIUS product line, a best-in-class family of autonomous aircraft whose game-changing capabilities have been responsible for revolutionizing military doctrine and creating a genre of new vehicles called air-launched effects ("ALE"). ALTIUS is a transforming, autonomous robotic aircraft that can be stored in a tube and launched at a moment's notice from a mothership such as an airplane, helicopter, boat, or ground vehicle. There are several sizes of ALTIUS aircraft currently in production; e.g., the ALTIUS-600 and ALTIUS-700. The ALTIUS is predominantly used by

defense entities, as it can be configured with various payloads to carry out a wide array of military missions. While the ALTIUS is primarily a military platform, there are also some civilian use cases, and in fall 2022 an ALTIUS-600 outfitted with a meteorological payload was launched from NOAA's P-3 into the eye of Hurricane Ian where it collected meteorological data never-before collected in a hurricane.

11.     ALTIUS is not the only successful product that Area-I created under Alley's leadership. Area-I also created: a sophisticated flying laboratory designed to evaluate high-risk aerodynamic technologies without endangering any human operators; a multi-agent mission-generation software tool" that was designed to assist human operators to efficiently manage single and multiple UAS, and is currently used onboard ALTIUS platforms to execute a wide array of missions; and an integrated multi-mode propulsion system which provides small form-factor UAS with a high-energy-density power system, extending its endurance while maintaining the capability to move quickly for rapid response.

## ANDURIL PURCHASES AREA-I AND ENTERS INTO AN EMPLOYMENT CONTRACT WITH ALLEY

12.     On or about March 25, 2021, Anduril purchased all the outstanding shares of Area-I. Area-I therefore became a wholly owned subsidiary of Anduril.

13.     In connection with Anduril's purchase of Area-I, Anduril made repeated assurances to Alley that Anduril would treat Alley's Area-I team with respect and dignity and that Alley would be on the Anduril executive team and would have visibility into, and the ability to support, the business of Anduril's other subsidiaries and businesses.

14.     On March 25, 2021, Anduril provided Alley an offer letter ("Offer Letter"), formally offering him the position of CEO of Area-I. The Offer Letter was signed by Anduril CEO Brian Schimpf ("Schimpf").

15.     The Offer Letter states that Alley is to continue to serve as CEO of Area-I in exchange for the compensation and promises set forth therein.

16.     Pursuant to the Offer Letter, if Alley is subject to a "Separation" because he terminated his employment for "Good Reason" occurring prior to the close of 2023, he would be entitled to a severance payment. Good Reason includes "a material adverse change in [Alley's] title, duties or responsibilities as CEO of Area-I."

17.     A Good Reason is a type of "Involuntary Termination" under the Offer Letter.

18.     The Offer Letter provides that if Alley is "subject to an Involuntary Termination during the 2022 calendar year, [his] Severance Payment will be equal to $4,000,000." If Alley is subject to an Involuntary Termination in the 2023 calendar year, Alley's severance payment is $1,000,000.

19.     The Offer Letter states that the term "Separation" is defined as a "separation from service" pursuant to the "regulations under Section 409A of the Internal Revenue Code of 1986, as amended."

20.     Treasury Regulation Section 1.409A-1(h)(1)(ii), defines a "termination of employment" for this purpose. The paragraph provides that "an employee is presumed to have separated from service where the level of bona fide services performed decreases to a level equal to 20 percent or less of the average level of services performed by the employee during the immediately preceding 36-month period." The Section 409A regulations do not require an employee to fully terminate employment with an employer for a "separation from service" to occur, and instead presume that an individual has experienced a Separation From Service if their level of work drops to below 20% of the level during the immediately preceding 36-month period.

**ALLEY SUFFERS FROM A PROTECTED MEDICAL CONDITION DUE TO STRESS CAUSED BY ANDURIL**

21.     In the spring of 2022, it became clear to Alley that Anduril was not living up to the assurances that it made him in connection with its acquisition of Area-I. For example, Anduril changed its executive team structure by creating "business

lines." Through this restructuring, Anduril deprived Alley of visibility into Anduril businesses other than Area-I's. Instead of being treated like an executive, Anduril began treating him like the engineering lead of a business line, even though he had years more experience, and more business responsibility, than many others running business lines. At one point, when Alley attempted to join a virtual meeting related to another business line, Anduril kicked him out of the call.

22. Anduril also assigned its Head of Organizational Development David Stager ("Stager"), to work under Alley on Area-I's leadership team. Although Stager was ostensibly assigned to Area-I to help Alley as his chief of staff, it quickly became apparent that Stager was essentially there to be Anduril's eyes and ears regarding Area-I. Stager consistently and openly questioned why Area-I was doing certain things and not doing others. Stager caused doubts among the leadership team and undermined Alley's leadership. It was evident that Stager was creating a laundry list of ways that Area-I was falling short in his opinion. Stager's actions did not sit well with Area-I's leadership team.

23. Anduril's actions to undermine Alley and eliminate his role on the executive team caused Alley tremendous stress. Alley had taken Area-I from its inception in 2009 and built it into a leading UAS company. In all of that time, and through that significant accomplishment, he had never felt anything like the amount of stress that he felt due to Anduril's actions.

24. On or about October 7, 2022, Alley woke up in the middle of the night with a racing heartrate that registered as abnormal on his smartwatch. Around this time, he became concerned about his health and specifically his heart due to the substantial stress he was under at work. In November 2022, Alley experienced severe chest pains and heart palpitations while in the office. Concerned he was having a heart attack, Alley went to the emergency room.

25. Alley had a series of medical appointments. Ultimately, a cardiologist prescribed a heart monitor and a sleep study. As a result of this testing, Alley was

diagnosed with stress-induced atrial fibrillation ("Afib"), prescribed heart medication, and now must undergo a heart procedure.

26.     Alley informed the Area-I leadership team about his heart condition.

**ALLEY REQUESTS REASONABLE ACCOMMODATIONS AND ANDURIL TERMINATES ALLEY FROM HIS JOB AS CEO OF AREA-I**

27.     On or about November 30, 2022, Alley met with Schimpf in Orange County, California. The purpose of this meeting was for (1) Alley to inform Schimpf that Anduril's actions had caused him substantial stress that resulted in a diagnosis of Afib and so that (2) Alley could request reasonable accommodations to reduce his stress due to his heart condition. It was apparent to Alley that Schimpf was already aware of his heart condition, after likely having been informed of it by Stager. Schimpf suggested that Alley take a three-to-six-month sabbatical due to his health. Alley was initially happy with this proposal because Alley believed (1) it showed that Schimpf was taking Alley's heath condition and need for reasonable accommodations seriously and (2) the Area-I leadership team was up for the challenge of working without his daily presence.

28.     Less than a month later, however, Schimpf instructed Alley to step down from his role as CEO of Area-I. On or about December 20, 2022, Schimpf held a video conference with Alley and others. Schimpf participated virtually from Orange County. Schimpf instructed Alley to relinquish his title and job duties. In other words, Schimpf terminated Alley from his job as CEO of Area-I. Schimpf stated that other individuals would assume the duties of Alley's job as CEO of Area-I. Specifically, Schimpf said that Stager was to take Alley's place as General Manager, Mike Roder would assume Alley's responsibilities overseeing customer strategy and business development. Schimpf also stated that the Area-I brand would fully merge with Anduril. Alley objected to these actions without result.

29.     Despite Alley's tremendous track record of success in leading Area-I, Schimpf provided no justification for the decision to terminate Alley from the role of

CEO. It was evident to Alley that Schimpf terminated him Anduril believed Alley could not handle the CEO role due to his health condition and request for reasonable accommodations.

30.     Schimpf's announcement in the December 20, 2022 video conference that Alley would be required to step down as CEO and that others would assume Alley's CEO job duties constituted Good Reason under the Offer Letter.

31.     Soon after the December 20, 2022 video conference, Alley met with his team and observed that he had opened the door to his termination as CEO by revealing his health problems to Anduril. Alley apologized to his team for his miscalculation in allowing Anduril to learn of his health condition.

32.     Prior to the December 20, 2022 meeting with Alley in which Anduril fired Alley from his role as CEO, Alley generally worked 12 hours per day, 6 days a week. Following that meeting, the amount of Alley's work dropped to less than 20% of that level and the focus of his work was on transitioning Stager to assume his duties. As a result, the Section 409A regulations presume that a Separation From Service occurred as of December 20, 2022. The Offer Letter defines a "Separation" to be based on this Section 409A definition of a "Separation From Service" that presumes Alley to have separated from service following the December 20, 2022 meeting.

33.     Anduril's in-house counsel conceded that Anduril owes Alley at least $1,000,000 in severance but has not paid even that amount to him.

34.     Alley sent a lengthy, carefully considered email to Schimpf on January 2, 2023 making an alternative proposal to the plan Schimpf laid out on December 20, 2022. Alley proposed, among other things, to forego or delay his sabbatical, change Stager's role with respect to Area-I due to the strain his presence had caused, and include Alley once again in broader Anduril discussions.

35.     Schimpf did not respond to Alley's email.

36.     On or about January 5, 2023, Alley met with Schimpf in person at the Anduril headquarters in Orange County, California. Schimpf communicated again that Anduril intended to proceed with the original transition plan. Schimpf stated that he had read Alley's January 2nd email, but that Anduril would be proceeding with the original plan.

37.     On or about January 27, 2023, Anduril provided Alley talking points and a draft email to use to announce his "resignation" from the role of CEO.

38.     On January 29, 2023, having no choice and with his alternative proposal already rejected, Alley emailed Schimpf stating that he would comply with Anduril's demand that he step down as CEO as of December 20, 2023. Alley also expressly stated that he did not consent to Anduril's termination of him from his role as CEO.

39.     On January 30, 2023 Alley sent an internal email announcing that he was taking a 6-month sabbatical and that Stager would be stepping in as Interim General Manager of Area-I.

40.     On January 31, 2023 Anduril sent an internal email to Area-I employees announcing that Alley was stepping down as CEO as of January 30, 2023.

41.     From February 20, 2023 until July 14, 2023, Alley was on sabbatical. Anduril initially sought to make the sabbatical unpaid, but Alley objected and Anduril ultimately agreed to pay Alley during the sabbatical.

42.     On February 21, 2023, Anduril communicated the terms of the sabbatical to Alley. Those terms included punitive measures such as forbidding Alley from "access [to] Company systems, email, or documents" and "represent[ing] [himself] as an agent of the Company."

43.     Anduril's adverse actions against Alley were planned, communicated and carried out by agents of Anduril operating from Orange County, California.

**ANDURIL CONSTRUCTIVELY TERMINATES ALLEY**

44.     On July 14, 2023, due to Defendants' unlawful conduct, Alley resigned his employment with Defendants and was constructively terminated.

45.     Defendants' discrimination and retaliation of Alley rendered his employment intolerable and forced his resignation.

46.     As a result of Anduril's termination of Alley from his job as CEO, and his subsequent constructive termination as an employee, Alley has lost many millions of dollars in wages, incentives, and benefits.

## ALLEY EXHAUSTS HIS ADMINISTRATIVE REMEDIES

47.     After submitting his forced resignation, Alley filed Charges of Discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") on July 14, 2023. His charges were cross-filed with the California Civil Rights Department.

48.     Alley received right to sue letters against Defendants from the California Civil Rights Department on September 20, 2023.

49.     Alley received right to sue letters against Defendants from the EEOC on September 22, 2023.

50.     Alley timely brings this action.

## **FIRST CLAIM FOR RELIEF**
## **BREACH OF CONTRACT**

51.     Alley hereby incorporates the foregoing paragraphs by reference.

52.     The Offer Letter constitutes an offer of employment on the terms stated therein.

53.     Alley accepted the offer by signing the Offer Letter and working as CEO of Area-I pursuant to the terms of the Offer Letter.

54.     The Offer Letter therefore contains the terms of a binding contract between Defendants and Alley.

55.     Defendants breached that contract by refusing to pay Alley the severance payment provided for in the Offer Letter.

56.     As a direct result of Defendants' breach of contract, Alley is entitled to a severance payment of $4,000,000, plus applicable interest, and all other damages available on this claim.

57.     In the alternative, and as a direct result of Defendants' breach of contract, Alley is entitled to a severance payment of $1,000,000, plus applicable interest, and all other damages available on this claim.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA LABOR CODE § 203

Cal. Lab. Code § 203.

58.     Alley hereby incorporates the foregoing paragraphs by reference.

59.     California Labor Code § 203 provides that an employer who fails to promptly pay all owed wages to employees who separate within the statutory period must pay the penalty set forth therein.

60.     Under the California Labor Code, wages are defined to include "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Lab. Code § 200(a).

61.     Labor includes "labor, work, or service whether rendered or performed under contract, subcontract, partnership, station plan, or other agreement if the labor to be paid for is performed personally by the person demanding payment." Cal. Lab. Code § 200(b).

62.     A severance is a wage as defined by the California Labor Code.

63.     Defendants failed and refused to pay Alley the severance to which he was entitled with the statutory period.

64.     As a direct result of Defendants' violations of § 203, Alley is entitled to all penalties and damages available on this claim.

65.     As a direct result of Defendants' violations of § 203, Alley is entitled to attorneys' fees and costs of suit in connection with this claim.

### THIRD CLAIM FOR RELIEF

### DISABILITY DISCRIMINATION IN VIOLATION OF THE
### AMERICANS WITH DISABILITIES ACT

42 U.S.C §§ 12201 *et seq.*

66.     Alley hereby incorporates the foregoing paragraphs by reference.

67.     Alley is a qualified individual with a disability within the meaning of the ADA because (1) Alley has a disability as defined by the ADA and (2) Defendants also regarded Alley as such under the ADA.

68.     The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C § 12112(a).

69.     Defendants discriminated against Alley on the basis of disability when it terminated him from his position as CEO of Area-I, LLC, removed his title, demoted him, and constructively discharged him.

70.     Alley has suffered and will continue to suffer loss of income, emotional distress, mental suffering, and other damages in excess of $75,000.

71.     Alley is also entitled to his attorneys' fees, costs, and disbursements incurred in connection with this claim.

72.     Defendants committed the above-alleged acts with reckless or deliberate disregard for Alley's rights and safety. As a result, Alley is entitled to punitive damages on this claim.

### FOURTH CLAIM FOR RELIEF

### RETALIATION IN VIOLATION OF THE

1
2

### AMERICANS WITH DISABILITIES ACT

42 U.S.C § 12203

3      73.    Alley hereby incorporates the foregoing paragraphs by reference.

4      74.    Alley engaged in protected conduct under the ADA by requesting
5  reasonable accommodations due to his disability.

6      75.    Defendants took multiple adverse actions against Alley, including
7  without limitation firing him from his position as CEO of Area-I, LLC, stripping him
8  of his job duties, stripping him of his direct reports, and constructively discharging
9  him.

10     76.    Alley's engagement in protected conduct was a substantial motivating
11  reason for one or more of the adverse actions Defendants took against Alley.

12     77.    The ADA, 42 U.S.C § 12203 prohibits an employer from engaging in
13  retaliation due to an employee's protected conduct. Defendants' acts constitute such
14  unlawful retaliation in violation of the ADA.

15     78.    As a direct result of Defendants' conduct, Alley has suffered and will
16  suffer damages for lost employment compensation and benefits in an amount not
17  fully known but in excess of $10,000,000.

18     79.    As a direct result of Defendants' conduct, Alley will suffer other or
19  general damages, including without limitation, damage to his reputation, pain and
20  suffering, humiliation, embarrassment, and emotional distress, all in an amount to be
21  proven at trial.

22     80.    Alley is also entitled to his attorneys' fees, costs, and disbursements
23  incurred in connection with this claim.

24     81.    Defendants committed the above-alleged acts with reckless or deliberate
25  disregard for Alley's rights and safety. As a result, Alley is entitled to punitive
26  damages on this claim.

27

28

### FIFTH CLAIM FOR RELIEF

## DISABILITY DISCRIMINATION UNDER THE CALIFORNIA
## FAIR EMPLOYMENT AND HOUSING ACT

### Cal. Gov't Code § 12940(a)

82.     Alley alleges and incorporates by reference the allegations in the preceding paragraphs.

83.     Defendants were, at all relevant times, employers as that term is defined in California Government Code §12926(d).

84.     Alley was Defendants' employee.

85.     Alley has a disability as defined in California Government Code §12926. Defendants knew Alley had a disability.

86.     Defendants also regarded Alley as having a disability.

87.     Alley was able to perform the essential job duties of his position and with or without reasonable accommodation.

88.     Defendants discriminated against Alley on the basis of disability when it terminated him from his position as CEO of Area-I, LLC, removed his title, demoted him, and constructively discharged him.

89.     Government Code §12940, subdivision (a), declares it an unlawful employment practice for an employer to discriminate in compensation, the terms, conditions or privileges of employment because of disability. The acts and conduct of Defendants, as described above, constitute unlawful discrimination in violation of Government Code §12940, subdivision (a).

90.     As a direct result of Defendants' conduct, Alley has suffered and will continue to suffer special damages for lost earnings and wages in an amount not yet fully known, but in excess of $10,000,000.

91.     As a direct and legal result of Defendants' conduct, Alley has and will suffer general damages including, but not limited to, damage to his reputation, pain and suffering, humiliation, embarrassment, and emotional distress, all in an amount to be proven at trial.

92.     As a direct and proximate result of Defendants' conduct, as alleged herein, Alley has been compelled to retain legal counsel and is entitled to reasonable attorney's fees and costs of suit, pursuant to California Government Code §§ 12940, 12965 subdivision (b) as well as other applicable statutes.

93.     Exemplary and punitive damages. Defendants, by their conduct as set forth above, have engaged in despicable conduct, exposing Alley to cruel and unjust hardship, with the intention to cause injury to Alley, and with conscious disregard of his rights. Defendants occupied a position of trust which gave them power to damage Alley's ability to earn a livelihood. Defendants abused that position of trust by maliciously, fraudulently, and oppressively constructively discharging Alley and discriminating against him under the circumstances described here. Alley is therefore entitled to punitive damages in an amount to be proven at trial. Defendants' conduct in discriminating against Alley was willful and oppressive and done in conscious disregard of his rights.

## SIXTH CLAIM FOR RELIEF

## RETALIATION UNDER THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT

Cal. Gov't Code § 12940(m)(2)

94.     Alley alleges and incorporates by reference the allegations in the preceding paragraphs.

95.     Alley engaged in protected conduct under the Cal. Gov't Code § 12940(m)(2) by requesting reasonable accommodations due to his disability.

96.     Defendants committed multiple adverse actions against Alley, including without limitation firing him from his position as CEO of Area-I, stripping him of his job duties, stripping him of his direct reports, and constructively discharging him.

97.     Alley's engagement in protected conduct was a substantial motivating reason for one or more of the adverse actions Defendants took against Alley.

98.    Cal. Gov't Code § 12940(m)(2) prohibits an employer from engaging in retaliation due to an employee's protected conduct. The acts of Defendants constitute such unlawful retaliation in violation of the California Fair Employment and Housing Act.

99.    As a direct result of Defendants' conduct, Alley has suffered and will suffer damages for lost employment compensation and benefits in an amount not fully known but in excess of $10,000,000.

100.   As a direct result of Defendants' conduct, Alley will suffer other or general damages, including without limitation, damage to his reputation, pain and suffering, humiliation, embarrassment, and emotional distress, all in an amount to be proven at trial.

101.   Alley is also entitled to his attorneys' fees, costs, and disbursements incurred in connection with this claim.

102.   Exemplary and punitive damages. Defendants, by their conduct as set forth above, have engaged in despicable conduct, exposing Alley to cruel and unjust hardship, with the intention to cause injury to Alley, and with conscious disregard of his rights. Defendants occupied a position of trust which gave them power to damage Alley's ability to earn a livelihood. Defendants abused that position of trust by maliciously, fraudulently, and oppressively constructively discharging Alley and discriminating against him under the circumstances described here. Alley is therefore entitled to punitive damages in an amount to be proven at trial. Defendants' conduct in discriminating against Alley was willful and oppressive and done in conscious disregard of his rights.

## SEVENTH CLAIM FOR RELIEF
## FAILURE TO TAKE ALL REASONABLE STEPS TO PREVENT
## DISCRIMINATION AND RETALIATION
### Cal. Gov't Code § 12940(k)

-17-

103.   Alley alleges and incorporates by reference the allegations in the preceding paragraphs.

104.   Defendants subjected Alley to discrimination and retaliation based on his disability, and Alley's engagement in protected conduct during the course of his employment.

105.   Defendants failed to take all reasonable steps to prevent discrimination, harassment, and retaliation.

106.   Alley was harmed as a result of Defendants' conduct, and Defendants' conduct and Defendants' conduct was a substantial factor in causing Plaintiff's harm.

107.   California Government Code §12940, subdivision (k) provides that it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination from occurring. Defendants' conduct, as described above, constitutes a failure to take all reasonable steps necessary to prevent discrimination in violation of California Government Code §12940, subdivision (k).

108.   As a direct result of Defendants' conduct, Alley has suffered and will suffer damages for lost employment compensation and benefits in an amount not fully known but in excess of $10,000,000.

109.   As a direct result of Defendants' conduct, Alley will suffer other or general damages, including without limitation, damage to his reputation, pain and suffering, humiliation, embarrassment, and emotional distress, all in an amount to be proven at trial.

110.   Alley is also entitled to his attorneys' fees, costs, and disbursements incurred in connection with this claim.

111.   Exemplary and punitive damages. Defendants, by their conduct as set forth above, have engaged in despicable conduct, exposing Alley to cruel and unjust hardship, with the intention to cause injury to Alley, and with conscious disregard of his rights. Alley occupied a position of trust which gave them power to damage Alley's ability to earn a livelihood. Defendants abused that position of trust by

maliciously, fraudulently, and oppressively constructively discharging Alley and discriminating against him under the circumstances described here. Alley is therefore entitled to punitive damages in an amount to be proven at trial. Defendants' conduct in discriminating against Alley was willful and oppressive and done in conscious disregard of his rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

A.    An award to Plaintiff of all available damages on each the claims alleged herein, including, without limitation,

  i.   Damages for breach of contract in an amount in excess of $4,000,000.

  ii.  Economic damages for lost employment compensation and benefits in an amount not fully known but in excess of $10,000,000;

  iii. Compensatory and general damages for damage to his reputation, pain and suffering, humiliation, embarrassment, and emotional distress, all in an amount to be proven at trial; and

  iv.  Exemplary and punitive damages.

B.    An award of reasonable attorneys' fees and costs pursuant to the California Fair Employment and Housing Act, the ADA and/or all other applicable laws;

C.    For all such other and further relief, in law or equity, as this Court may deem appropriate and just.

Dated: September 25, 2023           **NICHOLS KASTER, LLP**

                                    By:    s/Matthew C. Helland
                                           Matthew C. Helland

                                    Attorney for Plaintiff

-19-