ADAM J. KARR (S.B. #212288)
akarr@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18 Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

ANTON METLITSKY (*pro hac vice*)
ametlitsky@omm.com
NATASHA W. TELEANU (*pro hac vice*)
nteleanu@omm.com
DAVID COHEN (*pro hac vice*)
dcohen@omm.com
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Attorneys for Defendants*
*Anduril Industries, Inc. & Area-I, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nicholas Alley,<br><br>                    Plaintiff,<br><br>     v.<br><br>Anduril Industries, Inc. and Area-I, LLC,<br><br>                    Defendants. | Case No. 8:23-cv-01793-JWH-KES<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: February 9, 2024<br>Time:           9:00 a.m.<br>Courtroom:   9D<br>Judge:         Hon. John W. Holcomb |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, PLAINTIFFS, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, on February 9, 2024, at 9:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 9D of the above-entitled Court, located at 411 West 4th Street, Santa Ana, CA 92701, defendants Anduril Industries, Inc. and Area-I, LLC ("Defendants") will move, and hereby do move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims contained in the Complaint filed in this action by plaintiff Nicholas Alley. This Motion is based on the files, records, and proceedings in this action, this Notice, the following Memorandum of Points and Authorities, the concurrently filed Declaration of Natasha W. Teleanu and exhibits thereto, the Request for Judicial Notice, the reply memorandum that Defendants intend to file, the arguments of counsel, and such other matters as may be presented at the hearing on this Motion or prior to the Court's decision.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 21, 2023.

Dated:  December 4, 2023          O'MELVENY & MYERS LLP


By:   */s/ Anton Metlitsky*
                    Anton Metlitsky

Attorneys for Defendants
Anduril Industries, Inc. and Area-I, LLC

i

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION....................................................................................1

II. STATEMENT OF FACTS.......................................................................2

    A. Anduril's Acquisition of Area-I..................................................3

    B. Anduril's Transition Plan...........................................................4

    C. The Complaint.............................................................................6

III. ARGUMENT........................................................................................6

    A. Alley Fails to State A Disability Claim Under the ADA or FEHA................................................................................................7

    B. Alley Fails to State A Retaliation Claim Under the ADA and FEHA..............................................................................................18

    C. Alley's Derivative Claim For Failure To Take All Reasonable Steps To Prevent Discrimination And Retaliation Under the FEHA Likewise Fails...................................................................20

    D. Alley Fails to State a Claim for Severance Under Either the California Labor Code or His Offer Letter.....................................21

        1. Alley cannot state a claim for waiting time penalties under California law..............................................................21

        2. Alley's claim for severance under his Offer Letter fails.........22

IV. CONCLUSION....................................................................................25

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alley v. Anduril Indus., Inc.*,
C.A. No. 2023-0958-EMD (Del. Ch. Sep. 22, 2023)............................................5

*Alsup v. U.S. Bancorp*,
2015 WL 224748 (E.D. Cal. Jan. 15, 2015)............................................9

*Andrade v. Arby's Rest. Grp., Inc.*,
225 F. Supp. 3d 1115 (N.D. Cal. 2016)............................................20

*Arteaga v. Brink's, Inc.*,
163 Cal. App. 4th 327 (2008)............................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................7

*Atwood v. Consolidated Elec. Distributors, Inc.*,
231 Fed. App'x 767 (9th Cir. 2007)............................................14

*Avila v. Continental Airlines, Inc.*,
165 Cal. App. 4th 1237 (2008)............................................7

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007)............................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................7

*Bernstein v. Virgin America, Inc.*,
3 F.4th 1127 (9th Cir. 2021)............................................21, 22

*Broussard v. Univ. of Cal.*,
192 F.3d 1252 (9th Cir. 1999)............................................9

*Cabrera v. CBS Corp.*,
2018 WL 1225260 (S.D.N.Y. Feb. 26, 2018) ............................................14

*Cassidy v. Detroit Edison Co.*,
138 F.3d 629 (6th Cir. 1998)............................................15

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

*Dairy Road Partners v. Maui Gas Ventures LLC,*
2018 WL 3945373 (D. Haw. Aug. 16, 2018)........................................................5

*Delgado v. United Facilities, Inc.,*
2012 WL 10717266 (E.D. Cal. Feb. 21, 2012) .................................................17

*Dirks v. The Permanente Med. Grp., Inc.,*
2010 WL 1779932 (E.D. Cal. Apr. 29, 2010) ...................................................15

*Dunn v. Chaffey Cmty. Coll. Dist.,*
2017 WL 3427957 (C.D. Cal. Aug. 8, 2017) ....................................................11

*Escriba v. Foster Poultry Farms,*
793 F. Supp. 2d 1147 (E.D. Cal. 2011) ...........................................................20

*Ford v. Marion Cnty. Sheriff's Off.,*
942 F.3d 839 (7th Cir. 2019) ...........................................................15, 18, 19

*Franks v. City of Santa Ana,*
2015 WL 13919157 (C.D. Cal. Apr. 27, 2015)..................................................17

*Harris v. City of Santa Monica,*
56 Cal. 4th 203 (2013).....................................................................................16

*Haynes v. Williams,*
392 F.3d 478 (D.C. Cir. 2004) ...........................................................................9

*Higgins-Williams v. Sutter Med. Found.,*
237 Cal. App. 4th 78 (2015).............................................................................8, 9

*Hutton v. Elf Atochem North Am., Inc.,*
273 F.3d 884 (9th Cir. 2001) ..............................................................................7

*Hwang v. Kansas State Univ.,*
753 F.3d 1159 (10th Cir. 2014) .......................................................................12

*Jensen v. Wells Fargo Bank,*
85 Cal. App. 4th 245 (2000)..............................................................................11

*Kincheloe v. Am. Airlines, Inc.,*
2023 WL 3299989 (9th Cir. May 8, 2023).........................................................15

*Knox v. Donahoe,*
2012 WL 949030 (N.D. Cal. Mar. 20, 2012)......................................................20

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

*Lacayo v. Brennan*,
2015 WL 5569167 (N.D. Cal. Sept. 21, 2015)........................................................17

*Lenk v. Monolithic Power Sys., Inc.*,
2015 WL 6152475 (N.D. Cal. Oct. 20, 2015)...........................................................3

*Lindsey v. Nicholson*,
2009 WL 10698405 (C.D. Cal. Nov. 19, 2009)........................................................9

*Lopez-Rodriguez v. Kern Med. Surgery Ctr., LLC*,
2022 WL 17904540 (E.D. Cal. Dec. 23, 2022).........................................................8

*Madrigal v. Senior Aerospace SSP*,
2016 WL 4251573 (C.D. Cal. Aug. 9, 2016)...........................................................10

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006).................................................................................3, 5

*Milton v. Scrivner, Inc.*,
53 F.3d 1118 (10th Cir. 1995)................................................................................13

*Murray v. Mayo Clinic*,
934 F.3d 1101 (9th Cir. 2019)................................................................................16

*Paparella v. Plume Design, Inc.*,
2022 WL 2915706 (N.D. Cal. July 25, 2022).........................................................22

*Pardi v. Kaiser Found. Hosp.*,
389 F.3d 840 (9th Cir. 2004)..................................................................................18

*Petrie v. Electronic Game Card, Inc.*,
761 F.3d 959 (9th Cir. 2014)..................................................................................20

*Porter v. Sebelius*,
192 F. Supp. 3d 8 (D.D.C. 2016) .............................................................................9

*Rehling v. City of Chicago*,
207 F.3d 1009 (7th Cir. 2000).................................................................................19

*Rohr v. Salt River Project Agric. Imp. & Power Dist.*,
555 F.3d 850 (9th Cir. 2009)..................................................................................11

*Salgado v. Iqvia, Inc.*,
459 F. Supp. 3d 1318 (S.D. Cal. 2020)...................................................................19

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

*Scotch v. Art Inst. of Cal.*,
   173 Cal. App. 4th 986 (2009)...................................................................20, 21

*Severson v. Heartland Woodcraft, Inc.*,
   872 F.3d 476 (7th Cir. 2017).........................................................................12

*Smith v. Constellation Brands, Inc.*,
   725 Fed. App'x 504 (9th Cir. 2018)...............................................................10

*Stanfill v. Johnson*,
   203 Fed. App'x 72 (9th Cir. 2006).................................................................8, 9

*Steiner v. Verizon Wireless*,
   2014 WL 202741 (E.D. Cal. Jan. 17, 2014)...................................................11

*Striplin v. Shamrock Foods Co., Inc.*,
   731 Fed. App'x 618 (9th Cir. 2018)..................................................................8

*T.B. v. San Diego Unified Sch. Dist.*,
   806 F.3d 451 (9th Cir. 2015).........................................................................20

*Ting v. Adams & Assocs., Inc.*,
   823 Fed. App'x 519 (9th Cir. 2020)...............................................................16

*Turner v. Anheuser-Busch, Inc.*,
   7 Cal. 4th 1238 (1994)...................................................................................14

*Ward v. United Airlines, Inc.*,
   9 Cal. 5th 732 (2020).....................................................................................21

*Weaving v. City of Hillsboro*,
   763 F.3d 1106 (9th Cir. 2014).......................................................................10

*Woolf v. Strada*,
   949 F.3d 89 (2d Cir. 2020)...............................................................................9

*Yanowitz v. L'Oreal USA, Inc.*,
   36 Cal. 4th 1028 (2005).................................................................................18

**Statutes**

42 U.S.C. § 12102..............................................................................................7, 10

42 U.S.C. § 12111..................................................................................................11

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

42 U.S.C. § 12112.................................................................................................16

Cal. Gov. Code § 12926 .............................................................................7, 10, 13

California Labor Code § 203 .............................................................................21

**Regulations**

26 C.F.R. § 1.409A-1(h)(1)(i) ....................................................................23, 24, 25

29 C.F.R. § 1630.2(p)(2)(v)................................................................................13

29 C.F.R. Pt. 1630, App. § 1630.2(o)..............................................................15, 18

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION.**

Anduril Industries, Inc. ("Anduril"), a Delaware corporation, is a California-based defense company specializing in developing autonomous systems for the United States and its allies.  In March 2021, Anduril purchased Area-I LLC ("Area-I"), an aerospace defense company based in Georgia.  As part of that acquisition, Anduril provided Area-I's CEO and largest shareholder—Nick Alley—with substantial monetary consideration, and also kept him on as CEO of Area-I, which became a division within Anduril.

Alley, the Plaintiff here, was displeased with the way Anduril chose to run the business it had just purchased.  As his Complaint makes clear, he disagreed with Anduril's decision to introduce a senior Anduril employee to Area-I as Alley's chief of staff, and Alley was upset that Anduril treated him as the head of a business line, which he was, rather than as an Anduril executive.  Alley's correspondences show that he believed Anduril had been engaged in a campaign to remove him as CEO altogether since at least June 2022.

Alley's Complaint alleges that these business decisions by Anduril caused him tremendous stress, which resulted in a condition known as stress-induced atrial fibrillation ("Afib") in or around November 2022.  Alley made Anduril management aware of this condition in late 2022 and sought an accommodation, including (according to the Complaint and documents incorporated) a lengthy paid leave and/or a change in the way Anduril operated its business—including removing the new chief of staff and treating Alley as a full Anduril executive.  Anduril declined to alter its business strategy, but it did provide Alley an accommodation, to which he agreed:  a six-month, fully paid sabbatical, with the expectation that Alley would return to Anduril in a more suitable position.

About five months into his paid sabbatical, though, Alley abruptly quit, and then filed this suit, alleging that Anduril's decision to accommodate his stress-

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

induced Afib by giving him a lengthy paid sabbatical and returning him to a less stressful position was actually disability discrimination, as well as retaliation for Alley's request for a reasonable accommodation.

Alley's Complaint is meritless from start to finish. Alley's disability discrimination claim fails for numerous reasons, including that (i) conditions caused by job-related stress are not disabilities as a matter of law, (ii) Alley was unqualified to perform the job of CEO of Area-I, which his own Complaint makes clear, (iii) his Complaint fails to allege any adverse employment action against him, and (iv) his view that Anduril had been plotting since well before his disability to remove Alley is irreconcilable with his theory of disability discrimination. His retaliation claim likewise fails for several reasons, including that what he claims to be retaliatory—i.e., Anduril's grant of a sabbatical and intent to place him in a more suitable position upon his return—was not retaliation but rather a grant of the very type of accommodation Alley sought. Finally, Alley's separate claim for severance based on his employment contract with Anduril fails on its face for the numerous reasons discussed below.

In the end, Alley's Complaint boils down to his view that after he sold his company to Anduril, Anduril ran it in a way that he *personally* disagreed with, which caused him significant stress. Accordingly, Alley believes that Anduril should have changed the way it does business to accommodate his displeasure and that the only viable explanation in Anduril's failure to meet his demands must be rooted in discriminatory animus. But neither federal nor California law authorizes discrimination or retaliation claims for business disagreements. For these reasons and the further reasons set forth in detail below, Alley's Complaint should be dismissed for failure to state a claim upon which relief may be granted.

## II.   STATEMENT OF FACTS.

The following facts are taken from the well-pleaded allegations in the Complaint and documents incorporated therein. For purposes of this Motion only,

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

Anduril accepts the Complaint's factual allegations unless they are contradicted by documents incorporated in the Complaint.

### A.    Anduril's Acquisition of Area-I.

Anduril is an American defense company specializing in autonomous systems.  Compl. ¶ 4.  On March 25, 2021, Anduril acquired Area-I, a private aerospace defense company based in Georgia dedicated to the development of uncrewed aircraft technology.  Compl. ¶¶ 3, 12.  As a result of the acquisition, Area-I became a wholly owned subsidiary of Anduril.  Compl. ¶ 12.

Plaintiff is the founder and former CEO of Area-I.  Compl. ¶¶ 1, 3.  In connection with Anduril's acquisition of Area-I, Plaintiff was provided an offer letter stating that Plaintiff would continue to serve as CEO of Area-I and would be employed by Anduril.  Compl. ¶ 14;  Declaration of Natasha Teleanu in Support of the Motion to Dismiss ("Teleanu Decl.") Ex. A.[1]  Among other provisions, the Offer Letter contemplates severance if Alley is "subject to a Separation resulting from the termination of [his] employment by the Company without 'Cause' or [his] termination of employment for Good Reason (such a Separation, an 'Involuntary Termination') at any time before the close of the 2023 calendar year."  Teleanu Decl. Ex. A.  Under the terms of the Offer Letter, "Separation" means "a 'separation from service,' as defined in the regulations under Section 409A of the

---

[1] This Court may consider the Offer Letter in deciding this motion even though it is not attached to the Complaint.  Courts may consider at the pleadings stage evidence upon which the complaint "'necessarily relies' if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Here, the Offer Letter is the basis for Alley's breach of contract claim, and he cites the Letter throughout the Complaint.  Compl. ¶¶ 14-19, 30, 32, 52-55; *see, e.g.*, *Lenk v. Monolithic Power Sys., Inc.*, 2015 WL 6152475, at *1 (N.D. Cal. Oct. 20, 2015) (taking notice of an offer letter cited in, but not attached to, the complaint).  Accordingly, the Court may treat the Offer Letter as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Marder*, 450 F.3d at 448.

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

Internal Revenue Code of 1986, as amended." Teleanu Decl. Ex. A. The Offer Letter further provides that "any entitlement to receive any severance payment pursuant to this letter agreement shall be conditioned upon such termination constituting a 'separation from service' as defined in Code Section 409A." Teleanu Decl. Ex. A. If such a separation occurs in 2022, then Alley would be entitled to a $4 million severance payment; if in 2023, then a $1 million severance payment would be due. Teleanu Decl. Ex. A.

### B.    Anduril's Transition Plan.

Following its acquisition of Area-I, Anduril restructured its organization by creating separate business lines. *See* Compl. ¶ 21. As part of this restructuring, Area-I was treated as its own business line, reporting up to Anduril. *See* Compl. ¶ 21. Alley alleges that in the spring of 2022, "Anduril began treating him like the engineering lead of a business line," "[i]nstead of being treated like an executive." Compl. ¶ 21. To that end, Alley alleges that Anduril assigned its Head of Organizational Development, David Stager, to serve as Area-I's chief of staff, and effectively serve as "Anduril's eyes and ears regarding Area-I." Compl. ¶ 22. Alley alleges that Stager "undermined Alley's leadership," and "was creating a laundry list of ways that Area-I was falling short." Compl. ¶ 22.

Alley alleges that a little over a year following the March 2021 acquisition—that is, in the spring of 2022—Anduril started a "campaign" to remove him as CEO of Area-I. For example, Alley wrote to Anduril's CEO in January 2023: "[T]he campaign to remove me started less than 14 months after our closing." Teleanu Decl. Ex. B; *see also* Request for Judicial Notice Ex. 1 (Alley email to Anduril Vice President of Legal, stating: "What they haven't waffled on was a concerted effort since June '22 (and likely earlier) to remove me from my position as CEO").[2]

---

[2] The Court may consider the January 2, 2023, January 29, 2023, and January 30, 2023 e-mails and Slack message described in this Motion because the Complaint incorporates them by reference. *See supra* n.1. Alley expressly references each

4

According to Alley, "Anduril's actions to undermine Alley and eliminate his role on the executive team caused Alley tremendous stress." Compl. ¶ 23. In October 2022, Alley "became concerned about his health and specifically his heart due to the substantial stress he was under at work." Compl. ¶ 24. And, in November 2022, Alley alleges he was diagnosed with Afib, and thereafter informed the Area-I leadership team about his heart condition. Compl. ¶¶ 24-26.

On or around November 30, 2022—months after Alley alleges that Anduril began engaging in a "campaign to remove" him as CEO of Area-I, Teleanu Decl. Ex. B—Alley alleges he met with Anduril's CEO to inform him that Anduril's actions had caused him substantial stress, resulting in a diagnosis of Afib, and to "request reasonable accommodations to reduce his stress." Compl. ¶ 27. Alley alleges that Anduril's CEO suggested that Alley take a three-to-six month sabbatical. *See* Compl. ¶ 27. Anduril also agreed to pay him his full salary and benefits while on sabbatical. Compl. ¶ 41.

Alley was initially happy with Anduril's accommodation. Compl. ¶ 27. But Alley alleges that the next month (December 2022), Anduril's CEO instructed

---

email in the Complaint several times. Compl. ¶¶ 34-36, 38-39. The e-mails and Slack messages are also central to Alley's breach of contract claim, given they reflect his negotiation and ultimate agreement to step down as CEO of Area-I. Courts have similarly deemed e-mails and other communications referred to in complaints incorporated by reference. *See, e.g.*, *Dairy Road Partners v. Maui Gas Ventures LLC*, 2018 WL 3945373, at *8 (D. Haw. Aug. 16, 2018) (taking notice of a four-month long e-mail exchange referred to in, but not attached to, the complaint). Alley also has no reason to question the authenticity of these e-mails, and particularly neither the January 2, 2023 nor January 29, 2023 e-mails, given that he attached both to his complaint concurrently filed in the Delaware Court of Chancery (the "Delaware Complaint"). *Alley v. Anduril Indus., Inc.*, C.A. No. 2023-0958-EMD (Del. Ch. Sep. 22, 2023). Accordingly, the Court may treat these e-mails as "part of the complaint, and thus may assume that [their] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Marder*, 450 F.3d at 448. Defendants also request judicial notice of a February 9, 2023 e-mail from Alley attached to the Delaware Complaint. *See* Request for Judicial Notice.

Alley to step down from his position as CEO of Area-I. Compl. ¶ 28. Alley did not want to give up his role and sought to hold onto his CEO title despite expressly stating he could not perform it without "tak[ing] some significant P[aid] T[ime] O[ff]." Teleanu Decl. Ex. B. On January 29, 2023, Alley agreed to step down as CEO of Area-I, and on January 30, 2023, announced that "[b]eginning Feb 20, I will be taking a six-month sabbatical to spend some well deserved time with family. Upon return, I will take a new (yet to be defined) engineering-focused role helping across many of the Anduril business lines. Like many roles at Anduril, what that looks like exactly is unclear, but I'm excited to take some rest and come back refreshed ready to tackle new challenges." Teleanu Decl. Ex. B & Ex. C.

Anduril continued to pay Alley his full salary on sabbatical for almost five months, until he suddenly resigned on July 14, 2023. Compl. ¶¶ 41, 44.

## C.   The Complaint.

On September 25, 2023, Alley filed this lawsuit. His basic allegations are that Anduril (i) discriminated against him based on his alleged disability (i.e., Afib induced by the stress of his job); (ii) retaliated against him when he sought a reasonable accommodation; and (iii) breached the Offer Letter. Specifically, Alley asserts seven causes of action: (1) breach of contract alleging failure to pay severance owed to Alley under his Offer Letter, (2) failure to pay Alley wages in the form of severance under California Labor Code Section 203, (3) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), (4) retaliation in violation of the ADA, (5) disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), (6) retaliation in violation of the FEHA, and (7) failure to take all reasonable steps to prevent discrimination and retaliation in violation of the FEHA.

## III.   ARGUMENT.

A motion to dismiss under Rule 12(b)(6) must be granted when the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face."

6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Facial plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  To survive a motion to dismiss, a plaintiff must allege sufficient facts—not legal conclusions—to make her claim plausible. *Twombly*, 550 U.S. at 545, 555 (complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements"); *see also Iqbal*, 556 U.S. at 678.

For the reasons explained below, Alley's Complaint must be dismissed in its entirety under those standards.

**A.    Alley Fails to State A Disability Claim Under the ADA or FEHA.**

Alley asserts claims for disability discrimination under the ADA and FEHA. To plead a *prima facie* case of disability discrimination under either statute, a plaintiff must establish that he (i) suffers from a disability, (ii) is otherwise a qualified individual, and (iii) suffered an adverse employment action because of his disability. *Hutton v. Elf Atochem North Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001); *Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1246 (2008). Alley fails to plead these essential elements through non-conclusory, factual allegations.  Alley also fails to allege that Defendants harbored discriminatory intent, an additional requirement under the FEHA. *Avila*, 165 Cal. App. 4th at 1246.

**1.    Alley fails to allege a disability under either the ADA or FEHA.**

To survive a motion to dismiss, a plaintiff must establish that he has a disability.  But "not every illness qualifies as a disability." *Avila*, 165 Cal. App. 4th at 1249 (internal citations and marks omitted).  Under the ADA, a disability is a physical or mental impairment that "substantially limits" one or more major life activities.  42 U.S.C. § 12102(1).  The FEHA definition is similar:  a disability is a physical or mental disorder or impairment that "limits a major life activity." Cal. Gov't Code § 12926(j) & (m).  Alley fails to allege a "disability" for three

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

independent reasons.

*First*, Alley's alleged disability is workplace stress and a condition induced by that stress, which are not cognizable disabilities under the ADA or FEHA.

Alley alleges he has Afib, which he says he developed after suffering "tremendous stress" caused by "Anduril's actions to undermine Alley and eliminate his role on the executive team." Compl. ¶¶ 23, 25.  He asserts that he "had taken Area-I from its inception in 2009 and built it into a leading UAS [i.e., unmanned aircraft system] company.  In all of that time, and through that significant accomplishment, he had never felt anything like the amount of stress that he felt due to Anduril's actions." Compl. ¶ 23.  And he alleges that his stress and resulting Afib diagnosis were "caused" by Anduril's actions following its acquisition of Area-I, and in particular the alleged pressures and stresses placed on Alley as a result of that transaction.  Compl. ¶¶ 21, 23-35, 27.

The problem is that workplace stress and stress-induced conditions, as a matter of law, are not cognizable disabilities.  *See Higgins-Williams v. Sutter Med. Found.*, 237 Cal. App. 4th 78, 84 (2015) ("An employee's inability to work under a particular supervisor because of anxiety and stress related to the supervisor's standard oversight of the employee's job performance does not constitute a disability under FEHA."); *Striplin v. Shamrock Foods Co., Inc.*, 731 Fed. App'x 618, 620 (9th Cir. 2018) ("[W]orkplace stress related to the employee's job performance is not a cognizable disability under FEHA."); *Stanfill v. Johnson*, 203 Fed. App'x 72, 73 (9th Cir. 2006) (A "claimed inability to work for particular supervisors due to stress caused him by those supervisors is not, however, a disability within the meaning of the Rehabilitation Act."); *Lopez-Rodriguez v. Kern Med. Surgery Ctr., LLC*, 2022 WL 17904540, at *7 n.3 (E.D. Cal. Dec. 23, 2022) ("[W]ork-related stress is not a disability under FEHA.").

As in *Higgins-Williams* and *Stanfill*, Alley's work-related stress as CEO is not a cognizable disability under either the ADA or FEHA.  *See Higgins-Williams*,

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

237 Cal. App. 4th at 84; *Stanfill*, 203 Fed. App'x at 73.  And to the extent Alley alleges his stress caused a "heart condition," Compl. ¶ 27, the case law makes clear that such stress-related conditions likewise do not count as cognizable disabilities under either statute.  *See Woolf v. Strada*, 949 F.3d 89, 91 (2d Cir. 2020) (finding an employee suffering from migraines "related to [] stress at work" did not have a cognizable disability under the ADA); *Alsup v. U.S. Bancorp*, 2015 WL 224748, at *3-6 (E.D. Cal. Jan. 15, 2015) (finding a plaintiff who suffered from bipolar disorder, PTSD, and panic attacks onset by stress caused by her supervisor did not have a cognizable disability under the FEHA); *Higgins-Williams*, 237 Cal. App. 4th at 84 (finding anxiety and stress related to plaintiff's job does not constitute a disability under FEHA.).

*Second*, Alley's theory fails because a condition does not count as a cognizable disability if it is the result of a specific work environment—which is what he alleges here.  *See supra* at 8 (alleging his stress was caused by actions taken at Anduril, and that he "had never felt anything like the amount of stress that he felt due to Anduril's actions").  "If the symptoms of an impairment are brought on by a single workplace, such an impairment is not substantially limiting" within the meaning of the ADA.  *Haynes v. Williams*, 392 F.3d 478, 482-83 (D.C. Cir. 2004) (Garland, J.).  This is because "an individual is not substantially limited in working just because she is unable to perform a particular job, or unable to perform a specialized job." *Broussard v. Univ. of Cal.*, 192 F.3d 1252, 1256 (9th Cir. 1999); *Lindsey v. Nicholson*, 2009 WL 10698405, at *4 (C.D. Cal. Nov. 19, 2009) (same); *Woolf*, 949 F.3d at 94 (same); *accord Porter v. Sebelius*, 192 F. Supp. 3d 8, 16 (D.D.C. 2016) (collecting cases).  Alley does not allege that he cannot work another job, or even that he cannot be CEO of another similar company; he alleges that he can't work at Area-I specifically, and that is insufficient to state a claim here.

*Third*, Alley fails to allege that his impairment "substantially limits one or

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

more major life activities" (which he must allege under the ADA), *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (quoting 42 U.S.C. § 12102(1)), or (similarly) that it "limits a major life activity" (which he must allege under FEHA), *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 345 (2008) (quoting Cal. Gov't Code § 12926(k)(1)(A), (B) (current version at Cal. Gov't Code § 12926(m)(1)(A), (B)).  For an impairment to be considered "substantially limiting" under the ADA, a plaintiff must allege facts explaining the nature, severity and/or duration of his conditions, how those conditions limit a major life activity, and what major life activity is limited.  *See, e.g., Rodriguez v. John Muir Med. Ctr.*, 2010 WL 1002641, at *2 (N.D. Cal. Mar. 18, 2010); *Madrigal v. Senior Aerospace SSP*, 2016 WL 4251573, at *3 (C.D. Cal. Aug. 9, 2016); *see also Smith v. Constellation Brands, Inc.*, 725 Fed. App'x 504, 506 (9th Cir. 2018) (Under FEHA, "a plaintiff must sufficiently plead *how*" a disability limits his work).  For example, in *Rodriguez*, the plaintiff pled that she had a disability involving her back that limited life activities such as lifting.  2010 WL 1002641, at *2.  The court found that, even though she had identified a major life activity, she did "not allege[] facts that suggest that she is substantially impaired by her purported disability" nor facts illuminating the "nature, severity, duration and impact of her disability."  *Id.*  And in *Smith*, the Ninth Circuit affirmed the district court's dismissal of a FEHA claim where "[s]he made no allegations regarding how [her] conditions affected her ability to work as a financial analyst."  725 Fed. App'x at 506.

Here, Alley does even less, making only vague references to his "tremendous stress" and two isolated instances where he had a "racing heartrate" on October 7, 2022, and "severe chest pains and heart palpitations" in November 2022.  Compl. ¶¶ 23-25.  But he does not even attempt to identify a major life activity limited by—nor articulate how any major life activity even could be limited by—any such medical condition.  Compl. ¶¶ 23-25.  To the contrary, Alley admits that his lifestyle remained unchanged before and after he was diagnosed with Afib in

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

November 2022, when he "generally worked 12 hours per day, 6 days a week." Compl. ¶ 32. And he further admits that any limitations that his condition does impose could be ameliorated by replacing his chief of staff or treating him as part of Anduril's executive team. Compl. ¶ 34. Alley's allegations are thus insufficient to allege a disability under the ADA, *see Steiner v. Verizon Wireless*, 2014 WL 202741, at *5-6 (E.D. Cal. Jan. 17, 2014), or the FEHA, *see Dunn v. Chaffey Cmty. Coll. Dist.*, 2017 WL 3427957, at *10 (C.D. Cal. Aug. 8, 2017).

2.    Alley has not sufficiently alleged that he was qualified to hold the position of Area-I CEO despite his alleged disability.

"To state a claim of discrimination under the ADA, a plaintiff must establish that he or she is a 'qualified individual.'" *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 862 (9th Cir. 2009). The term "qualified individual" means an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 255 (2000) (Under the FEHA, "it is the plaintiff's responsibility to prove . . . that he or she is qualified to perform the duties of the position (with or without reasonable accommodation in the case of a disability claim)."). "As the plaintiff, [Alley] bears the burden to prove that he is 'qualified.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (ADA); *see also Jensen*, 85 Cal. App. 4th at 255 (same as to FEHA).

Here, Alley's own allegations (and documents incorporated into the Complaint) make clear that Alley was no longer qualified to do the job of CEO— *i.e.*, to run the Area-I business line—with or without a reasonable accommodation. In particular, he alleges that Anduril's alleged actions to "undermine Alley and eliminate his role on the executive team" by bringing in a chief of staff to supervise Alley's work as CEO and treating Alley as the head of Anduril business line rather than as an Anduril executive, Compl. ¶¶ 21-22—that is, actions having nothing to

11

do with any alleged disability but rather with Anduril's business strategy for its newly acquired business line—"caused Alley tremendous stress." Compl. ¶ 23. Because of that work-related stress, he was diagnosed with Afib. Compl. ¶¶ 24-26. Alley alleges that this stress and resulting condition precluded him from performing his job—it caused him what he alleges to be a disability that required a "reasonable accommodation[]" "to reduce his stress," Compl. ¶ 27, including at the very least "tak[ing] some significant P[aid] T[ime] O[ff]." Teleanu Decl. Ex. B.

Thus, Alley's own allegations make clear that he could not perform his job functions without reasonable accommodation. The Complaint also makes clear that no *reasonable* accommodation would allow him to perform his job—the Complaint mentions only two potential accommodations, but neither is reasonable. *First,* Alley suggests "significant" paid time off. Teleanu Decl. Ex. B. But it is well established that "a long-term leave of absence cannot be a reasonable accommodation" under the ADA because "an extended leave of absence does not give a disabled individual the means to work; it excuses his not working." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017); *accord Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1162 (10th Cir. 2014) (Gorsuch, J.). And while that is true as a general matter, it is especially true of the CEO. Of course, Anduril *did* provide Alley a lengthy paid sabbatical. But the ADA did not require it, and more important, the fact that Alley needed such a lengthy paid leave to do his job means he was not qualified—no discrimination-law principle suggests that an employer must accommodate the leader of a business by allowing him not to work for an extended period.

*Second*, Alley suggests he might have "forego[ne] or delay[ed] his sabbatical" if Anduril "change[d] Stager's role with respect to Area-I due to the strain his presence had caused" and "include[d] Alley once again in broader Anduril discussions." Compl. ¶ 34; *see also* Teleanu Decl. Ex. B. In other words, Alley alleges that he *could* have continued working if Anduril agreed to alter its

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

strategic business decisions to align with his *personal* demands, the lack of which purportedly made being CEO too stressful.  But, of course, neither the ADA nor FEHA requires an employer who had just paid substantial consideration to purchase a company to then change its strategic vision for that company's business operations in order to provide an accommodation to assuage the acquired CEO's stress level.  *See* 29 C.F.R. § 1630.2(p)(2)(v) (whether an accommodation presents an undue hardship under the ADA includes "[t]he impact of the accommodation upon the operation of the facility, including the … impact on the facility's ability to conduct business"); Cal. Gov. Code § 12926(u)(2) (whether an accommodation presents an undue hardship under the FEHA includes "the impact otherwise of these accommodations upon the operation of the facility"); *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995) ("An employer is not required by the ADA to reallocate job duties in order to change the essential function of a job.").  Alley's Complaint makes clear that he could not work under the conditions imposed by Anduril's business decisions, including imposing on him a chief of staff he did not trust and declining to treat him like an Anduril executive.  Those allegations confirm that Alley was not qualified to be the CEO of the Area-I business line Anduril purchased.

> 3.  Alley has not sufficiently alleged any adverse employment action.

Alley alleges that he suffered adverse employment actions when Anduril removed him as CEO and constructively discharged him.  Compl. ¶ 69.  Alley does not plausibly allege any adverse employment action.

a. Constructive discharge.  Alley's conclusory allegations are insufficient as a matter of law to plead a constructive discharge.[3]  Under the ADA and the FEHA,

---

[3] Alley's third cause of action for disability discrimination under the ADA, Compl. ¶ 69, fourth cause of action for retaliation under the ADA, Compl. ¶ 75, fifth cause of action for disability discrimination under the FEHA, Compl. ¶ 88, sixth cause of

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

"[c]onstructive discharge occurs when the employer's conduct effectively forces an employee to resign." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1244 (1994); *see also Atwood v. Consolidated Elec. Distributors, Inc.*, 231 Fed. App'x 767, 769 (9th Cir. 2007). To allege a constructive discharge, the "conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job [and] to earn a livelihood and to serve his or her employer." *Turner*, 7 Cal. 4th at 1246-47. Because the "proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee," an "essential element[] of any constructive discharge claim is that the adverse working conditions must be so intolerable that any reasonable employee would resign rather than endure such conditions." *Id.*; *see, e.g.*, *Cabrera v. CBS Corp.*, 2018 WL 1225260, at *8 (S.D.N.Y. Feb. 26, 2018) (finding constructive discharge where employer "refused to intervene when [plaintiff] sought their help" to protect him from other employees' "abuse and threats" to "physically harm him").

Alley fails to satisfy that demanding standard here. The gist of Alley's claim of constructive discharge is that, in the fifth month of his six-month paid sabbatical, which Anduril provided as an accommodation of his alleged disability and Alley agreed to, his employment inexplicably became "intolerable," which "forced his resignation." Compl. ¶¶ 44-45. Alley provides no factual detail on what was allegedly intolerable and egregious about his employment, let alone what conditions he was subjected to during the four-plus months of his sabbatical during which—by his own admission—he was not performing any work for Anduril but still getting paid. *See* Compl. ¶ 42. The Complaint comes nowhere close to alleging

action for retaliation under the FEHA, Compl. ¶ 96, and seventh cause of action for failure to take all steps to prevent discrimination and retaliation under the FEHA, *see* Compl. ¶¶ 104-105, all depend in part upon Alley's allegation that he was constructively discharged.

14

constructive discharge. *See Kincheloe v. Am. Airlines, Inc.*, 2023 WL 3299989 (9th Cir. May 8, 2023) (holding that plaintiffs failed to plead constructive discharge as a matter of law); *Dirks v. The Permanente Med. Grp., Inc.*, 2010 WL 1779932, at *4 (E.D. Cal. Apr. 29, 2010) (no constructive termination where plaintiff alleged she quit because defendant failed to change work conditions that caused her to develop a disability).

     b. <u>Demotion</u>.  Nor does Anduril's alleged decision to remove Alley as CEO and find a new, more suitable position post-sabbatical constitute an adverse employment action.  Obviously, a demotion in title *can* constitute an adverse employment action.  But according to Alley's allegations, his alleged demotion was Anduril's response to his request for a reasonable accommodation.  *See infra* at 15-16.  A demotion can be a reasonable accommodation because an "employer may reassign an employee to a lower grade and paid position if the employee cannot be accommodated in the current position and a comparable position is not available."  *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998); *see also* 29 C.F.R. Pt. 1630, App. § 1630.2(o) (an "employer may reassign an individual to a lower graded position if . . . there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation").

     The linchpin question here, then, is whether Anduril's decision to find a different, more suitable position for Alley upon his return from a sabbatical was (or was not) a reasonable accommodation for his alleged disability.  As detailed below, the answer is "yes."  *See infra* at 18-19.  Indeed, Alley quit before he could even assume his new position, and thus has no basis (nor has he alleged) that the new position was unreasonable.  And if (as is true here) an alleged demotion is, in fact, a reasonable accommodation, it cannot be an adverse employment action since an action cannot "simultaneously [be] a reasonable accommodation and an adverse employment action."  *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 856 (7th Cir. 2019).

In short, Alley (i) fails to allege that his work conditions—a paid sabbatical—amounted to a constructive discharge forcing him to quit, and (ii) fails to allege that having to step down from his purportedly stress-inducing CEO position was an adverse employment action rather than a reasonable accommodation for his alleged disability.  His disability-discrimination claims thus must be dismissed for failure to allege an adverse employment action.

          4.    <u>Alley has not plausibly alleged that Anduril's alleged adverse actions against him were because of his disability.</u>

Even assuming Alley could establish that his purported demotion or constructive termination were adverse actions, Alley fails adequately to plead that the alleged actions taken by Anduril were *because of* his alleged disability.  *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) ("[A]n ADA discrimination plaintiff bringing a claim under 42 U.S.C. § 12112 must show that the adverse employment action would not have occurred but for the disability."); *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013) (under FEHA, plaintiff must show discrimination was a "substantial motivating factor").  Rather, he includes only conclusory allegations that "Defendants discriminated against [him] on the basis of disability when it [*sic*] terminated him from his position as CEO of Area-I, LLC, removed his title, demoted him, and constructively discharged him." Compl. ¶¶ 69, 88.  This mere recitation of the legal standard, on its own, is insufficient to survive dismissal.  *See, e.g.*, *Ting v. Adams & Assocs., Inc.*, 823 Fed. App'x 519, 522 (9th Cir. 2020) (dismissing disability discrimination claim where the plaintiff "failed to allege any underlying facts" supporting the inference that the defendant used a false pretense to avoid rehiring her and thus alleged "no requisite causal link between [her] alleged disability and [defendant's] adverse employment action").

    Moreover, if Alley's actual allegations are taken as true, they would demonstrate that a disability could not have been the impetus for Anduril removing

16

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

Alley as CEO of Area-I. After all, Alley alleges that Anduril had engaged in a purported "campaign" to remove Alley as CEO starting in June 2022, months *before* Alley alleges that he became concerned about his health in October 2022, and his subsequent Afib diagnosis and alleged disclosure to Anduril in November 2022. Compl. ¶¶ 22-28; Teleanu Decl. Ex. B. If it were true that Anduril engaged in a campaign to remove Alley months before even he (let alone Anduril) knew of his alleged disability—as the Court must accept based on Alley's Complaint—his allegation that Anduril removed him *because of* that disability is implausible. *See, e.g.*, *Lacayo v. Brennan*, 2015 WL 5569167, at *4-5 (N.D. Cal. Sept. 21, 2015) (dismissing retaliation claim for lack of a causal nexus where plaintiff did not allege that defendant did anything differently after her alleged protected activity); *Franks v. City of Santa Ana*, 2015 WL 13919157, at *5 (C.D. Cal. Apr. 27, 2015) (dismissing FEHA retaliation claim for lack of a sufficient causal nexus where plaintiff alleged that an anonymous letter complaining about her led to her placement on administrative leave, and not her alleged protected activity).

Moreover, none of Alley's allegations establish that Anduril "harbored discriminatory intent," as necessary for his FEHA claim. *Delgado v. United Facilities, Inc.*, 2012 WL 10717266, at *5-6 (E.D. Cal. Feb. 21, 2012) (dismissing FEHA claim when plaintiff alleged no facts showing defendant's discriminatory intent). Alley's Complaint lacks any explanation to support Alley's otherwise conclusory allegations of discrimination. Rather, the Complaint concedes that Anduril was supportive of Alley's need for an accommodation, and the suggestion (and later purported "demand") to take a sabbatical "showed that [Anduril] was taking Alley's hea[l]th condition and need for reasonable accommodations seriously." Compl. ¶¶ 27, 38. Thus, in addition to his failure plausibly to allege that Anduril's actions would not have occurred but for his medical condition and Afib diagnosis—which defeats both discrimination claims—Alley's failure to allege discriminatory intent independently defeats his FEHA claim.

**B.      Alley Fails to State A Retaliation Claim Under the ADA and FEHA.**

Alley alleges claims for retaliation under the ADA and FEHA.  To state a claim for retaliation under either statute, a plaintiff must show that (i) he engaged in a protected activity, (ii) he suffered an adverse employment action, and (iii) there was a causal link between the two.  *Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 849 (9th Cir. 2004); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).  For purposes of this Motion only, Defendants do not dispute that Alley's allegation that he sought a reasonable accommodation from Anduril is protected activity.  But Alley fails sufficiently to plead the other two elements—an adverse employment action or a causal link between his request for accommodation and any such action.

*First*, Alley fails to allege an adverse employment action.  The premise of Alley's retaliation claim is that he engaged in protected activity by seeking a reasonable accommodation, and Anduril responded by giving him a paid sabbatical, demoting him from his CEO position, and then constructively discharging him.  His constructive discharge allegations are near-frivolous for the reasons already discussed and should be rejected out of hand.

Nor is Anduril's decision to give Alley a paid sabbatical and then bring him back in another suitable position—which Alley contends is a demotion—an adverse employment action.  Again, "demotion can be a reasonable accommodation"—and, thus, not an adverse employment action—"when the employer cannot accommodate the disabled employee in her current or prior jobs or an equivalent position." *Ford*, 942 F.3d at 855; *accord* 29 C.F.R. Pt. 1630, App. § 1630.2(o).

As discussed above, Alley alleges that he told Anduril that he would require a reasonable accommodation for his stress-induced Afib.  Obviously, an employer like Anduril is not required to continue employing an individual in a job that caused him so much stress that it resulted in a disability—certainly not in a high-pressure job like CEO.  *See supra* at 11-12.  Rather, an employer may be required to provide

18

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

a reasonable accommodation by finding a *different* position for which the employee is qualified, even if it counts as a "demotion." *See Ford*, 942 F.3d at 855. That is what Anduril did according to Alley's allegations. In response to Alley's request for an accommodation, Anduril gave Alley a six-month, fully paid sabbatical—which it was not required to do under the ADA. *See supra* at 11-13. And after Alley was to return from sabbatical, Anduril agreed to place him in a new, different role "helping across many of the Anduril business lines." Teleanu Decl. Ex. C.

That accommodation was reasonable as a matter of law, and thus could not be an adverse employment action. For the reasons detailed above, Alley's own allegations make clear he could not perform the role of CEO. *See supra* at 11-13. And the accommodations he alleges Anduril should have made—either giving him significant paid time off or changing the way it operates the business it had recently purchased—are not "reasonable accommodations" required by the ADA or FEHA. *See supra* at 11-13. Alley may, to be sure, have preferred to keep the title of a job he could no longer perform. But "[i]t is well-established that an employer is obligated to provide a qualified individual with a reasonable accommodation, not the accommodation he would prefer." *Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000); *see also Salgado v. Iqvia, Inc.*, 459 F. Supp. 3d 1318, 1330 (S.D. Cal. 2020) ("FEHA does not obligate an employer to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks."). And because Alley quit before he could find out the position to which he would have returned after his fully paid sabbatical, he has no basis to allege—and, indeed, does not allege—that Anduril's ultimate accommodation would have been unreasonable. It follows, then, that Alley has no basis to allege that Anduril's decision to return him to a job other than CEO after his return from his sabbatical was an adverse employment action rather than the type of reasonable accommodation he asked Anduril to provide.

*Second*, the Complaint is devoid of any pleaded facts suggesting a causal link

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

between his protected activity—requesting a reasonable accommodation for his Afib—and any adverse action.  The mere fact that certain actions "took place after [plaintiff's alleged protected activity] is not sufficient by itself to give rise to an inference of a causal link." *Knox v. Donahoe*, 2012 WL 949030, at *9 (N.D. Cal. Mar. 20, 2012).  That is particularly evident here, where Alley goes to great lengths to detail what he believed to be a "campaign" by Anduril to remove him as CEO that started months before he sought a reasonable accommodation.  The Court must accept those allegations as true at this stage, yet it cannot adopt Alley's theory of liability without rejecting Alley's allegations as false—if, as Alley alleges, Anduril desired to oust Alley as CEO well before he sought an accommodation for his alleged disability (and well before he even knew of any alleged disability), Compl. ¶¶ 21-23, then his allegation that he suffered an adverse action because of his request for an accommodation is implausible.  *See Petrie v. Electronic Game Card, Inc.*, 761 F.3d 959, 970 (9th Cir. 2014) (on a motion to dismiss, the court must look at the allegations "holistically, rather than in isolation" to determine whether the complaint is well-pleaded); *T.B. v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (holding that the requisite "causal link" between protected activity and adverse employment action requires a showing of but-for causation).

C.    **Alley's Derivative Claim For Failure To Take All Reasonable Steps To Prevent Discrimination And Retaliation Under the FEHA Likewise Fails.**

To state a claim under the FEHA for failure to prevent discrimination and/or retaliation, a plaintiff must show: (i) the plaintiff was subjected to discrimination, harassment, or retaliation, (ii) the defendant failed to take all reasonable steps to prevent discrimination or retaliation, and (iii) this failure caused the plaintiff harm. *Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1131 (N.D. Cal. 2016). Absent harassment, discrimination, or retaliation, the employer cannot be liable. *See Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1021 (2009); *Escriba v. Foster Poultry Farms*, 793 F. Supp. 2d 1147, 1165 (E.D. Cal. 2011).

20

As set forth above, Alley cannot state a claim for discrimination on the basis of his alleged disability or retaliation. As a result, he cannot establish the threshold element of a claim for failure to prevent discrimination and retaliation, and his claim must be dismissed as a matter of law. *Scotch*, 173 Cal. App. 4th at 1021.

**D.** **Alley Fails to State a Claim for Severance Under Either the California Labor Code or His Offer Letter.**

Alley alleges that Anduril owes him severance under the Offer Letter, and that Anduril's failure to pay the owed severance is not only a breach of that contract but also a violation of California Labor Code § 203, which requires paying wages due in a timely manner. Compl. ¶¶ 58-65. Both claims fail at the threshold—the Complaint does not allege that Alley was owed any severance under the Offer Letter. And even if he was, his Section 203 claim would fail because Alley worked and earned wages in Georgia, not California.

1. Alley cannot state a claim for waiting time penalties under California law.

Whether a wage statute like Section 203 applies extraterritorially to employees who work out of state "logically depends on whether the employee's principal place of work is in California." *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 754 (2020); *see also Bernstein v. Virgin America, Inc.*, 3 F.4th 1127, 1143 (9th Cir. 2021). Alley cannot assert a claim under California's waiting time penalties statute because he earned wages for work performed in Georgia and was paid in Georgia.

In *Ward*, the California Supreme Court considered whether plaintiffs (interstate transportation workers) were entitled to wage statements prepared in compliance with Labor Code Section 226, California's wage statement law, even though they performed most of their work outside of California. 9 Cal. 5th at 740. The court held that the appropriate test for the extraterritorial application of Section 226 was whether the employee's "principal place of work is in California." *Id.* at 754. Relying on *Ward*, the Ninth Circuit extended this holding to Section 203

21 DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

claims.  *Bernstein*, 3 F.4th at 1143.

Alley's Section 203 claim thus fails because he does not (and cannot) allege that his principal place of work was California.  That is because, as he actually alleges, he is a resident of Georgia, where he worked for Area-I, which also has its sole and principal place of business in Georgia.  Compl. ¶¶ 3, 5, 14.  Indeed, the Offer Letter explicitly states his principal place of work was in Georgia.  Teleanu Decl. Ex. A.  Thus, even if Alley were otherwise right that Anduril owed him severance, *but see infra* at 22-25, his claim under Section 203 must be dismissed.  *See Paparella v. Plume Design, Inc.*, 2022 WL 2915706, at *6 (N.D. Cal. July 25, 2022) ("[Plaintiff] has not shown that his principal place of work is in California.  In fact, his complaint alleges exactly the opposite:  [Plaintiff] is, and at all relevant times was, a resident of Maricopa County, Arizona.").

2.      Alley's claim for severance under his Offer Letter fails.

The Offer Letter promises Alley severance in two circumstances:  if he is (i) "subject to a Separation resulting from the termination of [his] employment by the Company without 'Cause' or [(ii)] [his] termination of employment for Good Reason (such a Separation, an 'Involuntary Termination') at any time before the close of the 2023 calendar year."  Teleanu Decl. Ex. A.  If he is (i) terminated without Cause or (ii) quits for "Good Reason" in 2022, he is owed a severance of $4 million; if either one occurs in 2023, he is owed $1 million.  Teleanu Decl. Ex. A.  Alley's main argument is that he was terminated without Cause on December 20, 2022, and thus is owed $4 million in severance.  *E.g.*, Compl. ¶ 32.  In the alternative, Alley argues that he is owed at least $1 million, Compl. ¶ 57, though he does not explain why.  Alley is wrong—he is in fact owed nothing because he was never terminated, and instead quit for no apparent reason at all.

a.  Alley was not terminated in 2022.  Alley's principal argument is that Anduril's CEO terminated him as of December 20, 2022.  But that is patently false, as demonstrated by Alley's own allegations—he repeatedly alleges that he

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

remained CEO of Area-I until late January 2023, Compl. ¶¶ 34, 36, 38, 39, and he even wrote an email, in his capacity as Area-I CEO, to Anduril's CEO on January 2, 2023, detailing his "primary responsibilities at Anduril" and outlining "[his] proposal for next year." Teleanu Decl. Ex. B.

Alley's alternative argument appears to be, however, that while he remained CEO until January 2023, he was still terminated in December 2022 because he started to work less after his December 20 conversation with Anduril's CEO. Compl. ¶ 32. Specifically, the Offer Letter conditions "any entitlement to receive any severance payment pursuant to this letter agreement . . . upon such termination constituting a 'separation from service' as defined in Code Section 409A" of the Internal Revenue Code of 1986. Teleanu Decl. Ex. A. And Alley relies on a portion of the relevant IRS regulations that he believes provides that a "[s]eparation from service" has occurred when an employee works less than 20% of his previous amount of work. Compl. ¶ 32.

Alley's argument is based on a fundamental misunderstanding of Section 409A's "separation of service" requirement. Generally, a "separation from service" occurs when an employee "dies, retires, or otherwise has a termination of employment with the employer." 26 C.F.R. § 1.409A-1(h)(1)(i). To that end, a "termination of employment" only occurs when "*the employer and employee reasonably anticipated that no further services* would be performed after a certain date or that the level of bona fide services the employee would perform after such date . . . would *permanently* decrease to no more than 20 percent of the average level of bona fide services performed . . . over the immediately preceding 36-month period." *Id.* § 1.409A-1(h)(1)(ii) (emphasis added). Even assuming Alley's work dropped to less than 20% at a specific point in time, as alleged, he could not have suffered a "termination of employment" unless the parties believed such services would end or *permanently* decrease to that level. Alley's own allegations contradict any such suggestion.

DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:23-CV-01793-JWH-KES

For one thing, Alley himself alleges that Anduril intended that he would assume a different, full-time position after his return from sabbatical, which is not a permanent termination of service (or even a permanent substantial decrease in service). Certainly, Alley does not allege that either he or Anduril anticipated that he would work less than 20% of his previous amount after his return. Indeed, Alley's own words make clear that he did not even believe by the end of 2022 that he would necessarily step down as CEO—on January 2, 2023, Alley argued that Anduril should keep him on as CEO. Teleanu Decl. Ex. B. And when Alley did resign as CEO on January 30, 2023, he admitted that he would return in another position, writing to Area-I employees: "Beginning Feb 20, I will be taking a six-month sabbatical to spend some well deserved time with family. *Upon return, I will take a new (yet to be defined) engineering-focused role helping across many of the Anduril business lines*." Teleanu Decl.. Ex. C (emphasis added).

Moreover, Alley concedes that he went on *paid* sabbatical, clearly indicating a continuation of service. 26 C.F.R. § 1.409A-1(h)(1)(i) ("[T]he employment relationship is treated as continuing intact while the individual is on military leave, sick leave, or other bona fide leave of absence if the period of such leave does not exceed six months."); *id.* § 1.409A-1(h)(1)(ii) ("[W]hether the employee continues to be treated as an employee for other purposes (such as continuation of salary and participation in employee benefit programs)" is a factor in determining whether a "termination of employment" occurred.). Until Alley resigned in July 2023, Anduril and Alley both anticipated he would return from sabbatical to perform an engineering-focused role. Teleanu Decl. Ex. C. Thus, the allegations of the Complaint are insufficient to establish Alley was terminated in 2022 under his Offer Letter.

b. Alley was neither terminated nor quit for Good Reason in 2023. Alley does not explain his "alternative" argument for entitlement to severance of $1 million. Such an entitlement would arise only if Alley either was terminated in

24

2023, or if he quit for "Good Reason" in 2023. But he alleges neither and admits he resigned in 2023 during his sabbatical before assuming his new position.

Alley's argument that he was terminated in 2023 presumably relies on his allegation that he was constructively discharged in July 2023. Compl. ¶¶ 44-46. But for the reasons explained, Alley does not (and cannot) allege any constructive discharge; he simply quit. *See supra* at 13-15. And voluntarily leaving his employment is not "a Separation resulting from the termination of your employment," as the Offer Letter requires. Teleanu Decl. Ex. A.

Alley would still be entitled to $1 million in severance if he had terminated his own employment for "Good Reason," including "a material adverse change in [his] title, duties or responsibilities as CEO of Area-I." Teleanu Decl. Ex. A. But Alley's own allegations make clear that he did not quit when his title and duties were taken away—he instead took a lengthy paid sabbatical, with the expectation by both parties that he would keep working in a different position when he returned. As explained, the Offer Letter requires a full "separation from service" before severance is owed, *see supra* at 23-24—obviously, no severance is required if there is no "termination of employment." 26 C.F.R. § 1.409A-1(h)(1)(i)-(ii). And while Alley eventually did quit, he does not (and could not possibly) allege that he did so because he would no longer be CEO, a fact of which he learned months earlier yet accepted a lengthy paid sabbatical with the intent to return in a new role. The terms of the Offer Letter do not require severance where Alley agreed to get paid for half a year without doing any work and then decided to quit before the end of the sabbatical. To adopt such a position would be contrary to underlying principles of contract law, and result in an inequitable windfall for Alley.

## IV.  CONCLUSION.

For all the foregoing reasons, the Court should grant Defendants' Motion and dismiss the Complaint in its entirety without leave to amend.

Dated:  December 4, 2023          O'MELVENY & MYERS LLP


                                  By:   /s/ Anton Metlitsky
                                            Anton Metlitsky

                                  Attorneys for Defendants
                                  Anduril Industries, Inc. and Area-I, LLC

26                      DEFENDANTS' MOTION TO DISMISS
                        CASE NO. 8:23-CV-01793-JWH-KES