# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS ALLEY,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDURIL INDUSTRIES, INC., and AREA-I, LLC,<br><br>        Defendants. | Case No. 8:23-cv-01793-JWH-KES<br><br>**ORDER REGARDING DEFENDANTS' MOTION TO DISMISS [ECF No. 49]** |

Before the Court is the motion[1] of Defendants Anduril Industries, Inc. and Area-I, LLC to dismiss the First Amended Complaint[2] of Plaintiff Nicholas Alley.  Alley opposes Defendants' Motion,[3] and the matter is fully briefed.[4]  The Court concludes that this matter is appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15.  For the reasons detailed below, the Court **GRANTS** Defendants' Motion with respect to Alley's two federal claims for relief under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12201 *et seq.*, and **DECLINES** to exercise supplemental jurisdiction over the remaining state law claims.

## I.  BACKGROUND

### A.    Procedural History

Alley filed this action in September 2023.[5]  Defendants moved to dismiss Alley's Complaint,[6] and Alley filed his operative Amended Complaint in response.[7]  Alley asserts seven claims for relief under both state and federal law in connection with his termination as CEO of Area-I after it was acquired by Anduril:

- breach of contract;
- failure to pay final wages in violation of the Cal. Lab. Code § 203;
- disability discrimination in violation of the ADA;
- retaliation in violation of the ADA;

---

[1]      Defs.' Mot. to Dismiss (the "Motion") [ECF No. 49].

[2]      First Am. Compl. (the "Amended Complaint") [ECF No. 44].

[3]      Pl.'s Opp'n to Motion (the "Opposition") [ECF No. 55].

[4]      Defs.' Reply in Supp. of Motion (the "Reply") [ECF No. 56].

[5]      Compl. [ECF No. 1].

[6]      Defs.' Mot. to Dismiss (the "First Motion to Dismiss") [ECF No. 35].

[7]      *See* Amended Complaint.

- disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(a);
- retaliation in violation of FEHA; and
- failure to take all reasonable steps to prevent discrimination and retaliation in violation of FEHA.[8]

**B.     Factual Allegations**

In his Amended Complaint, Alley alleges the following facts:

In early 2009, Alley founded Area-I, a defense technology and innovation company specializing in uncrewed autonomous systems technology.[9]  Anduril purchased all of the outstanding shares of Area-I in March 2021; at that point, Area-I became a wholly-owned subsidiary of Anduril.[10]  In connection with the acquisition, Anduril assured Alley that Alley would be treated with respect and dignity, and Anduril conditioned its acquisition of Area-I upon Alley's acceptance of a position on Anduril's executive team as "CEO of Area-I."[11]

According to Alley, "[s]uddenly, approximately a year after Anduril's acquisition of Area-I, Anduril determined to fully incorporate Area-I into Anduril as a business line," and "it became clear to Alley that Anduril was not living up to the assurances that it made him in connection with its acquisition of Area-I."[12]  "Anduril began treating [Alley] like the engineering lead of a business line," and "his official title at Anduril became 'Technical Lead' of a

---

[8]     *See generally id.*

[9]     *Id.* at ¶¶ 3 & 9.

[10]    *Id.* at ¶ 12.

[11]    *Id.* at ¶¶ 13-16.

[12]    *Id.* at ¶ 26.

business line."[13]  "Anduril had resolved to no longer treat [Alley] as an executive."[14]

Shortly thereafter, in May or June 2022, "Anduril assigned its Head of Organizational Development David Stager [] to work under Alley on Area-I's leadership team," ostensibly as Alley's chief of staff.[15]  But rather than support Alley, Stager undermined Alley's leadership of Area-I, cut-off communication between Alley and Anduril's leadership, and "effectively replaced [Alley] as the contact person for Anduril inquiries to Area-I—becoming, in effect, the de facto CEO of Area-I."[16]

"Anduril's actions to undermine Alley and eliminate his role on the executive team caused Alley tremendous stress."[17]  As a result of that stress, in October 2022, Alley experienced instances of elevated heartrate, difficulty sleeping, and chest pain—one instance led him to believe he was having a heart attack, so he went to the emergency room and was ultimately diagnosed with stress-induced paroxysmal atrial fibrillation.[18]

"Alley informed the Area-I leadership team about his heart condition in late November 2022."[19]  Thereafter, on November 30, 2022, Alley met with Anduril CEO Brian Schimpf to discuss Alley's work-related stress and diagnosis and to request accommodations.[20]  Schimpf "suggested that Alley take a three-

---

[13]    *Id.*

[14]    *Id.* at ¶ 28.

[15]    *Id.* at ¶¶ 29 & 30.

[16]    *Id.* at ¶¶ 30-32.

[17]    *Id.* at ¶ 33.

[18]    *Id.* at ¶¶ 33-37.

[19]    *Id.* at ¶ 38.

[20]    *Id.* at ¶ 40.

to-six-month sabbatical to rest," which satisfied Alley.[21]  But weeks later, on December 20, 2022, Schimpf "instructed Alley to step down from his role as CEO of Area-I;" Stager, Alley's former chief of staff, replaced Alley as General Manager of Area-I.[22]

On January 2, 2023, Alley emailed Schimpf—"a last plea to Schimpf to reverse course from his December 20, 2022 decision that Alley be removed as CEO of Area-I"—proposing, among other things, to forego or delay his sabbatical.[23]  Specifically, Alley stated:  "I want to be very clear, if you feel it best that I step down . . . I will do so.  Publicly we can blame it on my health, and we can find somewhere else for me to serve."[24]  In the email, Alley also noted:  "I know that there is pressure to dissolve Area-I.  I'd love to hear those views, and perhaps let folks understand my views on why that might or might not be a good idea."[25]

Alley asserts that Schimpf did not response to that email, but the two men met in person at Anduril headquarters three days later.[26]  During that meeting, "Schimpf stated that he had read Alley's January 2nd email, but that Anduril would be proceeding with the original transition plan," and "Anduril insisted that Alley announce his departure himself and frame it as a result of his

---

[21]    *Id.*

[22]    *Id.* at ¶ 41.

[23]    *Id.* at ¶ 48.

[24]    Decl. of Natasha W. Teleanu in Supp. of First Motion to Dismiss, Ex. B (unredacted) (the "Emails") [ECF No. 41-2] 5.

[25]    *Id.*

[26]    Amended Complaint ¶¶ 49 & 50.

disability."[27] "Anduril provided Alley talking points and a draft email to use to announce his 'resignation' from the role of CEO."[28]

"On January 29, 2023, having no choice and with his alternative proposal already rejected, Alley emailed Schimpf stating that he would comply with Anduril's demand that [Alley] announce Anduril's December 20, 2023 decision to remove him as CEO."[29] Specifically, Alley stated:

> I remain committed to do the right thing by the company and by our employees. I will honor my written promises and the intention of our original deal. I am hopeful you will do the same. I will speak with the Area-I employees tomorrow and send/sign the letters that have been prepared to the customers and Anduril at large. I have been in the process of compiling a letter to directly to Area-I employees that speaks highly of Anduril, its leadership, and the transition plan, with hopes to assuage employee fears and anxieties. However, none of these actions constitute my consent to you removing me as the CEO of Area-I.[30]

In that second email, Alley also noted that "[Anduril's] campaign to remove [him] started less than 14 months after" Anduril acquired Area-I, and, therefore, Alley requested that Anduril "keep [its] legal promise" to pay Alley $4,000,000 in severance for having terminated him as CEO prior to January 2023.[31]

The next day, "Alley sent an internal email to Area-I employees using Anduril's required talking points . . . announc[ing] that he was taking a 6-month

---

[27]     *Id.* at ¶¶ 50 & 51.

[28]     *Id.* at ¶ 52.

[29]     *Id.* at ¶ 53.

[30]     Emails 2.

[31]     *Id.*

-6-

sabbatical and that Stager would step in as Interim General Manager of Area-I."[32]  The following day, "Anduril sent an internal email to Area-I employees announcing that Alley was stepping down as CEO."[33]  Alley took a paid sabbatical between February 20, 2023, and July 14, 2023, when Alley resigned;[34] Alley asserts that "Defendants' discrimination and retaliation of Alley rendered his employment intolerable and forced his resignation."[35]

With respect to his ADA claims, Alley argues, in relevant part, that he "is a qualified individual with a disability within the meaning of the ADA" by way of his heart condition; that "Defendants discriminated against Alley on the basis of disability when they terminated him from his position as CEO of Area-I, removed his title, demoted him, and constructively discharged him"; and that Defendants retaliated against him in response to his request for reasonable accommodations for his heart condition by "firing him from his position as CEO of Area-I, stripping him of his job duties, stripping him of his direct reports, and constructively discharging him."[36]

## II.  LEGAL STANDARD

### A.    Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Am. Family Ass'n v. City &*

---

[32]    Amended Complaint ¶ 54.

[33]    *Id.* at ¶ 55.

[34]    *Id.* at ¶¶ 56-60.

[35]    *Id.* at ¶ 61.

[36]    *See id.* at ¶¶ 84-102.

-7-

*County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

**B.     Incorporation by Reference**

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the 'complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.'" *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)) (internal quotations omitted). "The court may 'treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Marder*, 450 F.3d at 448) (internal

-8-

quotations omitted).  When a document incorporated by reference undermines a party's assertions about that document in that party's pleading, the court should give precedence to the contents of the document over the party's inconsistent statements about that document.  *See id.* at 998-1005.

**C.      Rule 15(a)—Leave to Amend**

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).  The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Therefore, leave to amend should be granted unless the Court determines "that the pleading could not possibly be cured by the allegation of other facts."  *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

### III.  ANALYSIS

**A.      Alley's ADA Claims**

"To set forth a prima facie disability discrimination claim, a plaintiff must establish that:  (1) he is disabled within the meaning of the ADA; (2) he is qualified (*i.e.*, able to perform the essential functions of the job with or without reasonable accommodation); and (3) the employer terminated him ***because of*** his disability."  *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018) (emphasis added).  "'The term "disability" means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"  *Id.* (quoting 42 U.S.C. § 12102(1)(A)-(C)).  "'An individual meets the requirement of being regarded as having such an impairment if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is*

*perceived to limit a major life activity*.'"  *Id.* at 434 (quoting 42 U.S.C. § 12102(3)(A)) (emphasis in original).

Here, the Court cannot accept that Alley was "disabled" within the meaning of the statute because, by his own admission, he specifically requested to forego or delay his sabbatical—*i.e.*, to continue working in his former role with no accommodations.[37]  But even assuming that Alley was disabled or regarded as disabled under the ADA, "he would have to show some causal relationship between [his] impairment[] and his termination."  *Valtierra v. Medtronic Inc.*, 934 F.3d 1089, 1092 (9th Cir. 2019).  "He is unable to do so."  *Id.* Rather, Alley's emails illustrate that he understood Anduril to have undertaken a "campaign to remove [him]" that predated—and allegedly precipitated— Alley's heart condition.[38]  And Alley himself offered "[p]ublicly [to] blame [his sabbatical] on [his] health."[39]  In short, Alley appears to allege that Anduril's decision to demote or terminate him caused his health condition; not the other way around.[40]  Therefore, Alley cannot state a claim under either of his ADA theories.  *See generally Valtierra*, 934 F.3d 1089 (applying the same reasoning to deny an employee's appeal of both his ADA discrimination and retaliation claims); *see also Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (quoting *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003) ("A prima facie case of retaliation requires a plaintiff to show:  '(1) involvement in a protected activity [under the ADA], (2) an adverse employment action and (3) *a causal link between the two*.'") (emphasis added).

---

[37]     *See supra* Part I.B.

[38]     *See* Emails 2.

[39]     *Id.* at 5.

[40]     *See generally supra* Part I.B.

Thus, the Court **GRANTS** Defendants' Motion with respect to Alley's third and fourth claims for relief under the ADA. Because the Court's reasoning depends in large part upon Alley's emails, which were incorporated by reference, amendment would be futile, so those claims are **DISMISSED without leave to amend**. *See Lopez*, 203 F.3d at 1127.

**B.    Alley's State Law Claims**

In view of the Court's decision to grant Defendants' Motion and to dismiss Alley's only claims for relief that arise under federal law, the Court will **DECLINE** to exercise its discretion to assert supplemental jurisdiction over Alley's other five claims for relief that arise under state law. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (discouraging federal courts from making "[n]eedless decisions of state law"). Defendants' instant Motion to dismiss those claims under Rule 12(b)(6) is **DENIED without prejudice**. The parties may pursue their respective remaining claims and defenses in a court of competent jurisdiction.

### IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.    With respect to Alley's third and fourth claims for relief under the ADA, Defendants' instant Motion to dismiss is **GRANTED**. Alley's third and fourth claims for relief under the ADA are **DISMISSED without leave to amend**.

2.    The Court **DECLINES** to exercise supplemental jurisdiction over Alley's remaining state law claims. According, those remaining claims are **DISMISSED for lack of subject matter jurisdiction**. Defendants' Motion to dismiss Alley's remaining state law claims is **DENIED without prejudice**.

3.    Judgment will issue accordingly.

**IT IS SO ORDERED.**

Dated:   September 9, 2024

John W. Holcomb
UNITED STATES DISTRICT JUDGE

-12-